ANNIE BOURKE

v.

CÆSAR H. HEFTER.

*Opinion filed April 24, 1903.*

EQUITY—*when court of equity may enter personal judgment and require its payment.* If a court of equity finds that the defendant to a bill for foreclosure and accounting is liable on the notes but not bound by the trust deed, it may enter a personal judgment for the amount due and require its payment by the defendant as a condition to relief on her cross-bill to cancel the trust deed as a cloud.

*Bourke* v. *Hefter*, 104 Ill. App. 126, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

This was a bill to foreclose a trust deed, filed in the superior court of Cook county by Cæsar H. Hefter, the appellee, against the appellant, Annie Bourke. The bill alleged the making, December 6, 1889, by appellant, of a certain promissory note for $850, due three years after date; the extension of the note at maturity, by endorsement, for three years; another extension December 6, 1895, for another three years; the making of six semi-annual interest notes for the period of the last extension, and the making of a trust deed by appellant on certain property owned by her to secure the payment of the note and interest. The bill further alleged the default in the payment of the principal and of the last interest note, and that appellee was the legal holder and owner of said notes, and prayed that an account be taken and that appellant be decreed to pay whatever sum shall be found due, with costs and solicitors' fees, and in case of default of payment that the premises be sold to satisfy such amount, costs and solicitors' fees. Appellant answered

and also filed her cross-bill, in which she denied being indebted to appellee or to any other person, at any time, in the sum of $850, and denied the execution by her of the notes and trust deed, but alleged that the notes and trust deed were forgeries; that she never acknowledged the deed before the notary public or any other person, and that the certificates of acknowledgment are false. She further denied that appellee is the legal holder and owner of the notes, and alleged that she never paid any interest on the supposed indebtedness and knew nothing of the same until shortly before the bringing of the suit; that the trust deed and notes are clouds on her title, and prays that they be removed and canceled. Appellee answered the cross-bill, alleging that if appellant did not sign the notes and deed by her own hand she had adopted and ratified the same.

On a hearing before the court, the principal note, with an extension stamped on the back, the last interest note and the trust deed were introduced in evidence. Appellee testified that he was the legal owner of the notes; that they were transferred to him for the purpose of commencing foreclosure proceedings, and that he paid nothing for them. Appellant testified that she could not read or write, but that she had learned how to write her name. By her testimony she denied making the loan evidenced by the principal note; denied signing the note and the trust deed and denied having authorized any one to sign them for her; denied having acknowledged the trust deed; denied that she got any money on the loan or paid any interest on the same. Other witnesses for appellant testified that they were acquainted with her signature, and that the signatures to the principal note and trust deed were not hers. Moses E. Greenebaum testified to the same facts, but on cross-examination testified that appellant signed the extension agreement on the back of the principal note and also the interest note; that he saw her sign them in his office, in his presence, in December, 1895.

The court found that appellee was the legal holder of the notes; that appellant did not sign the principal note nor the endorsement to appellee thereon, and did not receive the consideration for which it was given, but that she ratified and adopted the same by signing the extension agreement; that she signed the interest note, and that there was due to appellee the sum of $1024.62, principal and interest, and that she was personally liable on said notes and in equity and good conscience bound to pay the same. The court further found that appellant did not execute the trust deed or authorize any one to do so for her, and that the adoption and ratification of the note did not operate as an adoption or ratification of the trust deed. The court gave appellee judgment for the sum found due and awarded execution as upon a judgment at common law, and ordered that upon the payment of the judgment the trust deed be removed, set aside, canceled and held for naught. On appeal to the Appellate Court the decree was affirmed, and the appellant has now appealed to this court.

F. L. SALISBURY, and D. L. CARMICHAEL, for appellant.

SIMEON STRAUS, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant insists that it was error in the decree to find that appellee was the legal owner of the notes, and that the real owner should have been made a party to the suit. The notes were payable at the office of Greenebaum Bros., which firm consisted of three brothers, two of them being parties to the suit, both individually and as trustees in the trust deed. The notes were payable to the order of the maker, and were by endorsement made payable to appellee. There was no evidence as to the real owner of the notes. They were in the possession of Greenebaum Bros., and were delivered to appellee for

the purpose of bringing suit and he was clothed with the legal title to them. Appellant was not prevented from making any equitable defense she had to the notes, and she was allowed to testify that she never received any consideration for them. The real owner having put the notes in the power of the appellee by having them endorsed to him unconditionally, cannot be heard to complain, and, as we have seen, no harm was done appellant thereby. Had the suit been at law, it would have been brought in appellee's name. By her answer and cross-bill she treated appellee as the proper party complainant.

It is further urged that appellant did not sign the extension agreement with full knowledge of all the material facts affecting her rights in the premises, so as to make it binding on her as a ratification of the unauthorized and illegal acts of another in signing her name to the original note. But the weakness of the appellant's contention lies in the fact that she did not introduce a particle of evidence on the subject of the extension agreement. Her counsel carefully abstained from calling her to the stand to disprove the evidence that she had signed the same, and did not cross-examine the witnesses for appellee who testified that she did sign the extension agreement. Appellant did not raise the question before the trial court, and there is nothing in the record to show that she did not know what she was doing when she signed the extension agreement or the interest note. These instruments speak for themselves. The extension agreement reads, in part: "And for value received I do hereby agree to pay both principal and interest notes in gold coin of the United States of the present standard of weight and fineness." The interest note declares that it is the "semi-annual interest installment on note of $850, dated December 6, 1889, and payable by extension December 6, 1898." To avoid the effect of these instruments, the signatures to which are undisputed, something more than silence is necessary. These prom-

issory notes are *prima facie* evidence, and it is incumbent on the maker to present her defenses if she would have them considered.

It is also contended that no personal judgment could be entered against appellant for the amount found due on the notes, and that it was error to require appellant to pay the judgment as a condition to setting aside the trust deed. It is claimed that such relief was not prayed for in the bill, and also that the proper judgment should have been that if appellant did not pay the amount found due, her cross-bill should be dismissed. Appellee's bill prayed for an accounting, and that appellant be decreed to pay whatever sum shall be found due, with costs and solicitors' fees. The cross-bill prayed for a cancellation of the trust deed. The court found that appellant was legally bound to pay the amount due on the notes, and as the court also found the trust deed not binding on appellant, no other judgment could have been entered than was entered. Both the bill and cross-bill having made a case cognizable in equity, equity had power to determine the whole matter and grant proper relief, although such relief could also be obtained at common law. (*Kelly* v. *Galbraith*, 186 Ill. 593.) In granting the removal of clouds on title it is in the power of the chancellor to require the complainant to do equity as a condition precedent to any relief.

Very little effort was made by either party to enlighten the court respecting the circumstances under which the notes and deed of trust were executed and the latter acknowledged. The appellee does not complain, although the deed seems to have been set aside on appellant's unsupported testimony. From the record, scant of evidence as it is, we cannot say that the terms on which the prayer of the cross-bill to set aside the deed of trust was to be allowed were inequitable.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*